IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VALERIE C. FINDLEY, | ) | |
| | ) | |
| Plaintiff, | ) | 2:20-cv-00088 |
| | ) | |
| v. | ) | Chief Judge Mark R. Hornak |
| | ) | |
| ALLEGHENY COUNTY OFFICE OF CHILDREN, YOUTH, & FAMILIES, et al., | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

**Mark R. Hornak, Chief United States District Judge**

Before the Court are three Motions to Dismiss (ECF Nos. 17, 20, 25) filed by Defendants in response to Plaintiff Valerie Findley's *pro se* Complaint at ECF No. 3. For the following reasons, Defendants' Motions to Dismiss (ECF Nos. 17, 20, 25) are **GRANTED**.

**I.     BACKGROUND**

The Plaintiff in this matter, Ms. Valerie Findley, filed a *pro se* Complaint on February 4, 2020, against the Allegheny County Office of Children, Youth, and Families ("CYF") and four individual CYF employees; several individual employees of the McKeesport Area School District; and the Honorable Kathryn Hens-Greco, a judge in the Family Court division of the Allegheny County Court of Common Pleas. The Complaint alleges that on December 10, 2019, Ms. Findley's child ("B.F") was targeted and wrongfully removed from his school and [their] home over an anonymous call from [an] agency" and subsequently placed with a "dangerous and abusive" individual. (ECF No. 3, at 4–5.) Plaintiff requests relief in the form of her son's return to Plaintiff's custody, and damages "to the fullest extent the law will allow." (*Id.* at 5.)

Plaintiff subsequently submitted multiple letters to the Court that repeat the allegation set forth in her Complaint and offer extraneous and unrelated information about Plaintiff's life, family, and health. (*See* ECF Nos. 5, 7, 14, 15, 16.) She attached to one letter various CYF documents and email communications with CYF employees. (ECF No. 7-1.) At one point, Plaintiff also informed the Court that she had been arrested and was being detained at Allegheny County Jail ("ACJ"). (ECF No. 14, at 1.)

According to the information provided by the Defendants in their Status Report at ECF No. 34, Plaintiff was taken into custody at the ACJ on March 7, 2020. (ECF No. 34, at 1.) She was released from the ACJ on April 22, 2020 and was subsequently admitted to the Torrance State Hospital on April 24, 2020. (*Id.*)

Meanwhile, in April and May 2020, each of the Defendants in this matter filed a Motion to Dismiss, *see* ECF Nos. 17, 20, 25, along with supporting Briefs, *see* ECF Nos. 18, 21, 27. Service of those Motions varied by Defendant and occurred via at least one of the following options: (1) first-class mail sent to the Plaintiff's address of record as of May 2020; (2) first-class mail sent to the Torrance State Hospital; (3) first-class mail sent to the ACJ; and/or (4) an email sent to the address listed on this Court's ECF system. (*See* ECF No. 34, at 2–4.) On June 8, 2020, Plaintiff filed a temporary change of address, listing the Torrance State Hospital as her new address of record. (ECF No. 37.) The Defendants informed the Court that they re-served the Motions to Dismiss on the Plaintiff at the Torrance State Hospital following her change of address. (ECF No. 42.)

On July 20, 2020, this Court ordered Plaintiff to show cause as to why she remained competent to proceed *pro se*. (ECF No. 43, at 4 (citing Fed. R. Civ. P. 17(c)).) The Court also directed Torrance State Hospital to file notice on the docket as to the status of Plaintiff. (*Id.*)

Plaintiff did not respond to the Court's Order, but on October 8, 2020, Torrance State Hospital submitted an expert medical assessment of Plaintiff. (ECF No. 52.) The report found that Plaintiff suffered from paranoia and schizophrenia but concluded that she was competent to stand trial. (*Id.* at 3.)

On September 22, 2020, to ensure that Plaintiff was actually served with the Defendants' Motions to Dismiss and had a fair opportunity to respond, this Court again ordered Plaintiff to file notice of her current address on the docket and to respond to the pending motions on or before October 20, 2020. Plaintiff promptly advised the Court of her current address, which was the same address where Defendants had previously served their Motions. (*See* ECF No. 50.) Plaintiff failed to respond to Defendants' Motions.[1]

## II.   LEGAL STANDARD

### A. *Pro Se* Litigants

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520–21 (1972). In practice, this liberal pleading standard works as "an embellishment of the notice-pleading standard set forth in the Federal Rules of Civil Procedure." *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring). Put another way, when the Court reviews Ms. Findley's *pro se* Complaint, it should prioritize substance over form.

---

[1] The Court notes the *Poulis* factors outlined by the Third Circuit to determine when a court should exercise discretion to dismiss a party for failure to prosecute: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim. *See Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863, 868 (3d Cir. 1984). "Dismissal is a harsh remedy and should be resorted to only in extreme cases," and "the policy of the law is to favor the hearing of a litigant's claim." *Marshall v. Sielaff*, 492 F.2d 917, 918 (3d Cir. 1974). With that in mind, and considering the fact that Plaintiff proceeds *pro se* and that her case can easily be resolved on jurisdictional grounds, the Court opts not to engage in a *Poulis* analysis.

## B. *In Forma Pauperis* Litigants

Because Ms. Findley proceeds in this action *in forma pauperis* (IFP) the Court is obligated to screen her Complaint under 28 U.S.C. § 1915. Under § 1915(e), the Court must dismiss any IFP complaint if it facially fails to state a claim, is frivolous or malicious, or seeks damages against an immune defendant. *See id.* § 1915(e); *see also Salgado-Toribio v. Holder*, 713 F.3d 1267, 1270 (10th Cir. 2013). In performing its § 1915(e) screening function, a district court should employ the same standard used for motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See, e.g.*, *Anderson v. Macy's, Inc.*, 943 F. Supp. 2d 531, 537 (W.D. Pa. 2013).

Under Rule 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Supreme Court's decision in *Ashcroft v. Iqbal* held that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not enough to survive a Rule 12(b)(6) motion. 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Instead, under Rule 12(b)(6), the plaintiff's factual allegations must "raise a right to relief above the speculative level" and state a plausible claim for relief. *Twombly*, 550 U.S. at 555.

Our Court of Appeals has broken the *Iqbal* and *Twombly* pleading standard into a three-part framework. First, the Court "identif[ies] the elements of the claim." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). Second, the Court "review[s] the complaint to strike conclusory allegations." *Id.* Third, the Court "look[s] at the well-pleaded components of the complaint and evaluat[es] whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Id.* Along the same lines, the Third Circuit has held that the complaint must "show" that the plaintiff is entitled to relief based on the facts that the Court must presume as true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).

### III.  DISCUSSION

#### A.  Plaintiff's Competence to Proceed *Pro Se*

Before this Court rules on Defendants' Motions to Dismiss, it will return to the question of Plaintiff's competence to proceed *pro se*, previously addressed by the Court at ECF No. 43. At that time, the Court was hesitant to move forward on Defendants' Motions because, though it had not "received 'verifiable evidence from a mental health professional' indicating that [Plaintiff was] . . . legally incompetent," the Court noted that Plaintiff resided at a public psychiatric hospital and that her mental health status was unclear. (ECF No. 43, at 3 (citing *Bacon v. Mandell*, No. 10-cv-5506, 2012 WL 4105088, at *15 (D.N.J. Sept. 14, 2012)).) Since then, additional information on the matter of Plaintiff's competence has been submitted to the Court. For one, it appears from Plaintiff's recent change of address from Torrance State Hospital to a residential home that Plaintiff no longer resides at a psychiatric hospital. (*See* ECF No. 50.) More importantly, Plaintiff's doctor at Torrance State Hospital filed an expert report concluding that she is legally competent. (ECF No. 50.) Therefore, not only is there not "verifiable evidence" in the record to demonstrate that Plaintiff is legally incompetent, but there is now affirmative evidence before the Court that Plaintiff is in fact legally competent. Because "[a] court is not required to conduct a *sua sponte* determination whether an unrepresented litigant is incompetent unless there is some verifiable evidence of incompetence," the Court will not conduct a further Rule 17(c) analysis and will instead address the pending Motions. *See Powell v. Symons*, 680 F.3d 301, 307 (3d Cir. 2012).

#### B.  Motions to Dismiss

Plaintiff named three groups of Defendants in her Complaint: (1) CYF and CYF employees ("CYF Defendants"); (2) employees of McKeesport Area School District ("School District

5

Defendants"); and (3) the Honorable Kathryn Hens-Greco. Each group of Defendants filed a separate Motion to Dismiss. The Court considers each Motion in turn.

1. **CYF Defendants' Motion to Dismiss**

The CYF Defendants argue that Plaintiff's claim against them must be dismissed because the *Rooker-Feldman* and *Younger* abstention doctrines bar this suit, and the Defendants are entitled to qualified immunity. (ECF No. 21, at 5–12.) The Court agrees, and as such, the CYF Defendants' Motion to Dismiss will be granted.

As a preliminary matter, the Court notes that, to support their arguments that Plaintiff's Complaint should be dismissed, the CYF Defendants attached to their Motion state-court records pertaining to Plaintiff's child-custody case. In assessing a motion to dismiss, courts may generally only consider the allegations that are set forth in the complaint. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). However, courts may also consider matters of public record, undisputedly authentic documents attached to a motion to dismiss, and integral documents that form the basis of a claim. *See id.*; *Delaware Nation v. Pennsylvania*, 446 F.3d 410, 413 n.3 (3d Cir. 2006). The Court concludes that it is appropriate to consider the state-court documents filed by the CYF Defendants because the documents are "matters of public record" and are "undisputedly authentic documents attached to a motion to dismiss." *See Delaware Nation*, 446 F.3d at 413 n.3. In addition, after she filed the Complaint, Plaintiff herself submitted some of the same state-court documents offered by the CYF Defendants, demonstrating that the documents are "integral" to and "form the basis of" Plaintiff's claim. *See Brown v. Daniels*, 128 F. App'x 910, 913 (3d Cir. 2005).

Given the bare-bones allegations set forth in Plaintiff's Complaint, the Court believes it necessary to summarize the factual background established by the state-court documents. State-

court records show that Judge Hens-Greco, a co-defendant in this lawsuit, held a dependency hearing in December 2019, at which she ordered B.F.'s removal from Plaintiff's care and his custody placement with another individual. (ECF No. 21-1.) To the Court's knowledge, the state-court juvenile case remains ongoing. On January 10, 2020, Plaintiff filed a lawsuit in the Civil Division of the Court of Common Pleas of Allegheny County against the same CYF Defendants that she sued in this federal action and involving the same allegations. (ECF No. 21-7.) On January 13, 2020, the state court dismissed Plaintiff's lawsuit because it was not a matter for the Civil Division, advising that Plaintiff could instead petition the Family Division to direct CYF to return her son to her custody. (ECF No. 21-9.) Plaintiff first filed the present action in federal court on January 21, 2020. (ECF No. 1.)

Under the *Rooker-Feldman* doctrine, federal courts "lack jurisdiction over suits that are essentially appeals from state-court judgments." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 165 (3d Cir. 2010). The *Rooker-Feldman* doctrine applies when: (1) the plaintiff lost in state court; (2) the plaintiff complains of injuries caused by state-court judgments; (3) the judgments were rendered before the federal lawsuit was filed; and (4) the plaintiff asks the federal district court to review and reject the state-court judgment. *Id.* at 166. The doctrine is confined to cases brought by plaintiffs who, after losing in state court, invite district courts to review and reject the state-court judgments. *See Skinner v. Switzer*, 562 U.S. 521, 532 (2011). The Third Circuit has held that the *Rooker-Feldman* doctrine applies to federal lawsuits implicating child-custody decisions. *See, e.g.*, *Young v. Dubow*, 411 F. App'x 456, 458 (3d Cir. 2011) (holding that *Rooker-Feldman* applied when the federal complaint stemmed from an adverse state-court custody decision); *Marran v. Marran*, 376 F.3d 143, 150–51 (3d Cir. 2004) (concluding that the district court lacked jurisdiction under *Rooker-Feldman* over claims that were inextricably

7

intertwined with the state-court adjudication of a child-custody matter, in which a ruling for the plaintiff would have necessarily required a finding that the state court erred in its custody decision).

Here, Plaintiff suffered an adverse result in state court, in which judgment was rendered before this federal action was filed. In both the state lawsuit and federal lawsuit, Plaintiff complained of the removal of B.F. from her custody and sought the return of B.F. to her care. After the state court refused to adjudicate Plaintiff's case, Plaintiff sought review from this Court over the exact same allegations that she brought in state court. This is not an instance where the plaintiff has come to federal court to challenge the statute or rule governing the decision with which she disagrees. *See Skinner*, 562 U.S. at 552–53. Thus, all four prongs of the *Rooker-Feldman* test are met, and this Court lacks jurisdiction over this case.

Furthermore, the *Younger* abstention doctrine requires this Court to abstain from exercising jurisdiction over Plaintiff's claim against the CYF Defendants. The *Younger* abstention doctrine applies when: (1) the state proceedings are judicial in nature, (2) the proceedings implicate important state interests, and (3) the federal plaintiff has an adequate opportunity in the state proceedings to raise constitutional challenges. *See Miller v. Mitchell*, 598 F.3d 139, 145–46 (3d Cir. 2010). The "fair administration of child custody and parental rights proceedings" is undoubtedly an important state interest. *See McDaniels v. New Jersey Div. of Youth & Family Servs.*, 144 F. App'x 213 (3d Cir. 2005) (citing *Moore v. Sims*, 442 U.S. 415, 427 (1979)). Indeed, it is common for federal courts to apply the *Younger* abstention doctrine in suits against CYF where child-custody determinations are still being worked out in state court. *See, e.g.*, *Shallenberger v. Allegheny Cnty*, No. CIV 2:20-cv-00073-NR, 2020 WL 1465853, at *5 (W.D. Pa. March 26, 2020).

Given that Plaintiff's child-custody proceedings in the Family Division of state court have not concluded, this Court's resolution of the claim would improperly interfere with an ongoing state proceeding. Plaintiff's lone allegation that her child was wrongfully removed from her custody is squarely encompassed by any proceedings in state family court. Plaintiff has an adequate opportunity there to raise challenges to the custody determination of her son, including any constitutional challenges. The Court thus concludes that the *Younger* abstention doctrine applies, and the Court must abstain from hearing this case as to all Defendants.

Finally, the CYF Defendants also assert that qualified immunity shields them from liability. (ECF No. 21, at 11.) State actors, including child welfare agency officials, *see Bayer v. Monroe Cnty. Children & Youth Servs.*, 577 F.3d 186, 193 (3d Cir. 2009), sued in their individual capacity are entitled to qualified immunity "unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (9182); *Dougherty v. Sch. Dist. of Philadelphia*, 772 F.3d 979, 986 (3d Cir. 2014) (citing *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). In determining whether qualified immunity applies in a specific case, the Court must "first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all." *Leveto v. Lapina*, 258 F.3d 156, 162 (3d Cir. 2001).

Here, Plaintiff has failed to allege any specific actions taken by the CYF Defendants that violated Plaintiff's constitutional rights. The entirety of Plaintiff's allegations is that Plaintiff's child was removed from her home after an anonymous call. Plaintiff does not plead any factual allegations to establish that her constitutional rights were deprived, let alone as a result of the CYF Defendants' actions. Accordingly, the Court concludes that Plaintiff did not allege a deprivation of a constitutional right.

2. **School District Defendants' Motion to Dismiss**

The School District Defendants offer two arguments for why the Court should grant their Motion to Dismiss: first, they too claim that qualified immunity shields them from liability, and, second, they assert that the Complaint fails to state a claim upon which relief can be granted. (ECF No. 27, at 4.) This Court concludes that the School District Defendants are immune and that Plaintiff fails to state a plausible claim for relief.

The Court's above discussion of qualified immunity as to the CYF Defendants applies with equal force here. The School District Defendants qualify as state actors for these purposes. *See, e.g.*, *Mann v. Palmerton Area Sch. Dist.*, 872 F.3d 165, 170 (3d Cir. 2017), as amended (Sept. 22, 2017); *see also Daniels v. Sch. Dist. of Philadelphia*, 982 F. Supp. 2d 462, 477 (E.D. Pa. 2013), aff'd, 776 F.3d 181 (3d Cir. 2015). Like with the CYF Defendants, Plaintiff has failed to allege that her constitutional rights have been violated by the School District Defendants. All that the Complaint alleges is that her minor child was "targeted and wrongfully removed from his school." (ECF No. 3, at 4.) But that recitation does not facially implicate the violation of any right secured by the Constitution, even if broadly construed.

For similar reasons, the Court also concludes that Plaintiff fails to state a claim upon which relief can be granted. As discussed above, the Court holds Plaintiff's *pro se* Complaint to a "less stringent standard" than other formal pleadings drafted by lawyers. Even still, the Complaint must contain sufficient factual allegations to state a claim for relief. Plaintiff's only allegation is that her minor child was targeted and wrongfully removed from his school and wrongfully placed with "a dangerous and abusive person." (ECF No. 3, at 4–5.) But that is all. That is not enough for the Court to infer a violation of Plaintiff's constitutional rights. And even if the Court could infer a constitutional violation, Plaintiff plainly fails to plead any factual allegations that would allow the

Court to reasonably infer the School District Defendants' liability for any such violation, and any such liability would be personal to such individuals. *See Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). The blanket and conclusory allegations here do not meet that mark. In the complete absence of any specific factual allegations against School District Defendants, any claim against them will be dismissed.

### 3. The Honorable Kathryn Hens-Greco's Motion to Dismiss

Likewise, apart from her name in the caption, Plaintiff's Complaint does not once mention Judge Hens-Greco and is devoid of any allegations against her. As described above, Judge Hens-Greco presided over the state-court custody proceedings related to the removal of Plaintiff's child from her custody. (*See* ECF No. 17, at 1.) To the extent that Plaintiff's Complaint against Judge Hens-Greco is based on those proceedings, the Court concludes that she is immune from such action and that the Complaint fails to state a claim against her upon which relief can be granted.

Judge Hens-Greco, a judicial officer of the Family Court division of the Court of Common Pleas of Allegheny County, is entitled to Eleventh Amendment immunity from claims against her in her official capacity. "Although state officials literally are persons, an official-capacity suit against a state officer is not a suit against the official but rather is a suit against the official's office." *Hafer v. Melo*, 502 U.S. 21, 26 (1991) (quotations and citations omitted). And Pennsylvania state courts, including the court over which Judge Hens-Greco presides, are part of the "Commonwealth government." *See Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 240 (3d Cir. 2005) (citing provisions of the Pennsylvania Constitution). As such, they are state agencies that are entitled to immunity, rather than local agencies. *Id.* A suit against Judge Hens-Greco in her official capacity is thus "no different from a suit against the State itself." *See Hafer*, 502 U.S. at 26. Because Pennsylvania has not waived its Eleventh Amendment immunity, *see* 42 Pa. Stat.

§ 8521, it is entitled to the full protection of such immunity. *See also Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3rd Cir. 1981). Accordingly, Plaintiff's Complaint against Judge Hens-Greco in her official capacity is barred by Eleventh Amendment immunity.

Judge Hens-Greco is also entitled to absolute judicial immunity. In considering Plaintiff's Complaint, this Court concludes it is fair to assume that any allegations against Judge Hens-Greco pertain to actions taken in her judicial capacity in overseeing Plaintiff's child-custody case. It is a "well-established principle" that a judge is immune from suit for all actions taken in her judicial capacity so long as she had jurisdiction to act. *See Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978); *see also Mireles v. Waco*, 502 U.S. 9, 11 (1991) (explaining the "only two sets of circumstances" where absolute judicial immunity can be overcome). Plaintiff makes no claim that Judge Hens-Greco acted in the absence of jurisdiction. And the Court notes that the court over which Judge Hens-Greco presides has "unlimited original jurisdiction of all actions and proceedings." *See* 42 Pa. Stat. § 931. Any perceived "unfairness" or "disagreement" that Plaintiff has with the actions taken by Judge Hens-Greco "does not justify depriving that judge of [her] immunity." *See Stump*, 435 U.S. at 363. Given Judge Hens-Greco's immunity in this matter, the Court lacks jurisdiction over any of Plaintiff's claims against her.

Finally, for substantially the same reasons as explained above, Plaintiff fails to set forth a claim against Judge Hens-Greco upon which relief can be granted. Plaintiff does not plead any facts that establish the violation of Plaintiff's rights or any liability on behalf of Judge Hens-Greco.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss (ECF Nos. 17, 20, 25) are GRANTED. Accordingly, Plaintiff's Complaint (ECF No. 3) is DISMISSED with prejudice. Because the Court concludes that the *Rooker-Feldman* and *Younger* abstention doctrines bar

Plaintiff's claims, any amendment to the Complaint would be futile. Further, any amendments as to Judge Hens-Greco would be additionally futile in light of her well-taken defenses of judicial immunity and Eleventh Amendment immunity.

                                                  s/ Mark R. Hornak
                                                  Mark R. Hornak
                                                  Chief United States District Judge

Dated: November 24, 2020

cc:     All counsel of record
       Valerie Findley, *pro se*